was not put into evidence and we don't know what it showed. There was also the arbitrator, and thus the Commission, also relied on the petitioner's testimony at trial that he testified he initially did not assist the vendor with moving the barrel of iodine because he did not think that he could because of his back issues. Both the petitioner and the respondent's testified that they were well aware of Mr. Marshall's prior back issues. They both said, testified that there were things that he did not do during the time frame that he worked for the respondent because of his back. And that was another factor that the Commission looked at in determining the credibility of both the petitioner and Dr. Fahn. I raised the issue only because the arbitrator specifically found that while the petitioner received no significant treatment for his low back between his surgery of 2004 and his accident. Correct. But she also noted the medical record. She went through them specifically as to which, what findings were given at each office visit. And I want to say there were like 11 visits, and I could be wrong on that number off the top of my head, but she did go through those specifically. And so it wasn't as if the Commission ignored the evidence that was there regarding whether there was or was not prior treatment. And the arbitrator also, affirmed by the Commission, specifically indicated that given the facts in this case, a chain of events theory was not enough to find causation in this case. She did specifically address that in her decision as well. The petitioner focuses on bilateral foot numbness and the reference to it in the record and indicates that it was relied on in some way by the Commission and by the arbitrator and the Commission. I would respectfully disagree with that. It is mentioned, but at no point in my reading of the this medical condition exists. They noted it in terms of the complaints were there and there was no indication or testimony from Dr. Fahn as to why or how that played into his causation opinion. There was an antalgic gait referenced in Dr. Fahn's history in the notes from his nurse, not in his written report. And there was the three-month history of bilateral foot numbness in the rural health records. But neither of those factors was specifically addressed by Dr. Fahn as to why the need for surgery is related to the work accident as it was found by the Commission. I mean the accident part and not to the prior. And there's argument in the petitioner's brief that the Commission was playing doctor basically. And I don't read that. I don't see that. They simply mention the issues and go to the and address the credibility of those issues in terms of it's out there, but it wasn't addressed. The same with Dr. Wilson being mentioned. The Commission didn't say we find that Dr. Wilson would have been favorable to the respondent or favorable to the petition. It simply mentioned that Dr. Wilson's name is out there as a treater in the prior surgery in 2004. But no conclusion is drawn other than that, other than to say we were kind of curious as to what Dr. Wilson would have said. But they didn't make a finding as to what they thought Dr. Wilson would have done. So in a simple sense, you're saying the record will not support a finding even of an aggravation of a pre-existing condition? Correct. And that was another point that the arbitrator brought up, which was in the Commission, which was Dr. Fahn had two histories given to him, the accident and then the general toll of doing farm work. And that was not addressed either. And that is, in my opinion, the problem with Judge Kavanagh's decision. And if you read Judge Kavanagh's decision, he totally and absolutely indicates what his interpretation of the evidence is. He doesn't say the evidence doesn't support this. He says that the testimony of Dr. Fahn is credible and unrefuted. We even care what he said? Well, I don't like to discount any judge, Your Honor. So from that standpoint, yes. But in this case, I understand your point. And no, we really don't. We really are looking at the original Commission decision. But that's kind of my point is that he exceeded his authority, if you will, in not looking at the Commission's decision and addressing that as opposed to interpreting it himself. The point that I want to make strongly is it was a finding that the petitioner did not sustain his burden of proof. In other words, the arbitrator and the Commission did not place everything on Dr. Fahn. They basically said this was not preceded. All the evidence was not out there. And I am out of time until rebuttal. So thank you. Yes, you are. Sorry about that. Sorry. Yes, I wasn't paying attention to you. Thank you, Miss Parks. You'll have time and Thank you. Mr. Denny, you may proceed. Mr. Denny, we have to wait until you're not muted. Right now, you're muted. Ah, the green light's on. There you go. We're good now? Yes. Yes. All right. Thank you. Your Honor, to me, this case is about not the credibility of the facts. It's the credibility about facts versus things not in the record. The facts in the form of evidence in this case versus a fabrication made by an arbitrator. A licensed neurosurgeon testified after being told what the accident was, which is a 49-year-old farmhand helping lift a 55-gallon drum of iodine hurt his back. That licensed neurosurgeon said he believed that that was the cause or aggravation of Mr. Marshall's injury. There is no doctor in this record that says otherwise. How can it be aggravation? Maybe I misunderstand the record. Is there anything there to suggest the doctor was aware of a prior condition? No. As a matter of course, typically, we'll ask caused or aggravated just as a matter of asking the question of deposition. There are completely different things. Yes, that's true. I do not believe there's any clear indication of pathology in the record at 5S1 that was existing at the time of this accident. If you look at Dr. Fahn's notes, his prior surgery, I believe, and Dr. Fahn references is at L3-4, which is a different part of the spine. This is actually a little bit different part of the back. Mr. Denny, let me ask you a question about the point you just made. You pointed out that Dr. Fahn's testimony is unrebutted. Isn't it well established that the commission is a trier fact, is not bound to accept even unrebutted testimony as long as they can establish or articulate a good reason for doing so? Do they have to accept Fahn's testimony? Well, I think that depends on what case law you're referring to. I think there's case law from the appellate courts that says, no, they don't have to accept the only opinion. I think the question becomes whether or not this case rises to that level. Ms. Parks references the anomalies in Kraft Foods. One, Dr. Koh, who was the only testifying doctor, wasn't the treating physician. He was a retained expert by the petitioner. I also wanted to point out from that Kraft Foods opinion, while the court does say that they're not bound by it, they go on to follow the opinion of the only treating physician. In other words, the that particular case. With regards to the inference of these prior records and the reference to Dr. Wilson, Dr. Fahn looked at those records. They're in his file. He discusses them in his deposition. It's in the record at R176. Not only did Dr. Fahn have a chance to look at those records, counsel had an opportunity to look at them when she looked at his file. They're not in the record because no one testified they were relevant to the current condition of this patient. We simply don't offer into evidence records that are irrelevant. But the arbitrator, which is the whole consistent pattern in this case, goes out there and says, perhaps there's something else out there that we don't know. Well, that's not the standard. It's the manifest weight of the evidence. It's not the manifest weight of all potential things that might have been admitted or offered in another scenario. It's the manifest weight of the evidence before the commission, the evidence before the court. We could all sit here, and I don't think anyone has ever gotten to an appeal, much less the appellate court level, and thought, well, I guess I probably or I wish I would have secured this piece of evidence or that piece of evidence. But I don't get to argue those things. I only get to argue what's in the record. Mr. Denny, how do you respond to the commission's finding that Dr. Fon's testimony or opinion was based primarily on the inaccurate, incomplete self-reporting of the claimant? How do you respond to that? I do not believe that's accurate at all. If you look at how that opinion is written, arbitrator Lindsey is using some vague references to moderate back paying in rural health records. Dr. Fon, when he issued his causation opinion, was fully aware that this gentleman hurt his back lifting a 55-gallon drum. And if you look at those references and the things arbitrator Lindsey's looking at in the rural health records, those rural health records are family doctors that occasionally prescribe over-the-counter ibuprofen for occasional back pain for a 49-year-old farmhand. That is hardly indicative of a serious ongoing medical condition. And maybe most directly is if you look at arbitrator Lindsey's opinion, she highlights the idea of this bilateral foot numbness as indicative of a 5S1 radiculopathy. Well, now we've jumped from merely saying he may have had a prior back problem to saying this foot numbness is also attributable to this back injury. And when you come back to the whole point of Ms. Park's argument on Kraft Foods, the commission is not bound by the only medical opinion. Well, what am I supposed to do when they make one up and it's wrong? Medically, bilateral foot numbness is not indicative of an L5S1 disc pathology. It's just medically wrong. So now you have the idea of, well, the commission has certain leeway to say things. For instance, I have a bad meniscus on my left knee. And if I also have a new injury to my left knee, that's not necessarily a leap to jump there. But to say foot numbness, which has many causes, could have many different issues. And for an arbitrator with no doctor in the records saying the MRI shows a disc protrusion which correlates to nerve root impingement at a specific area and what the family doctor was saying, that's what he's talking about. None of that's in the record. She takes bilateral foot numbness. And I don't know how else to argue this because I didn't get to cross-examine arbitrator Lindsay on the fact that her assumption is anatomically and medically incorrect. And so... How do we know that? Well, I know that because I've read hundreds of IME reports and any time a petitioner... How do we know that? How do you know? That it's anatomically incorrect. We know who tested... Well, I guess that's a question for the court. I don't know what you're vested with. I googled bilateral foot numbness and this is not one of the top issues that comes up. How does a court do that? I think it comes back to my first statement. It's the manifest weight of the evidence, which is there is no evidence that bilateral foot numbness is indicative of a 5S1 disc herniation. But to answer Justice Hoffman's direct question, there's nothing in the record that suggests that it was anatomically and medically incorrect. That's your reading after a Google search. And your experience reading all the other... Yeah, right. That's correct. And my point... I'm sorry, Justice Hoffman? The corollary to that is there's no evidence in the record that it is related. Right. The arbitrator made it up. That's correct. And that's where I point to the case law under Voightkin and the cases before it and after it. Before Voightkin in circuit court, you couldn't argue that we have this same body part versus different body part. In Voightkin, to use a preexisting medical condition in circuit court, we would have to have medical testimony to that effect. And I think allowing an administrative law judge to make a leap of something in a completely different body part is related to this injury. Overriding a neurosurgeon, that's just too far from me. I understand the commission is supposed to be a summary proceeding. We don't want these things to... We want them to be as simple as possible. But for a treating neurosurgeon to be overwritten by some type of pasting together of various opinions is a little bit much, especially when no other doctor correlates all those things. So what arbitrator Lindsey and the commission do is they take Dr. Wilson's records that were reviewed and considered by the treating physician, but not in the record. Some vague references from a family doctor, none of which, by the way, would have an admissible opinion regarding a neurosurgical condition of a spine in Illinois. And then maybe something about what the petitioner said and put all these things together like an expert doctor would. And it's too much to overcome. And if you look back at Sorenson, one of the issues was there were lots of doctors in Sorenson, which is kind of tied to that crash food case that the respondent relies on. There were several other doctors qualified to render surgical opinions that really didn't come through for the petitioner. So you have doctor after doctor. What we're looking at is some vague references by rural health family doctors and then trying to use those to overcome a neurosurgeon. And I think especially with the way the pendulum is swinging now with work comp, where we get new arbitrators every three years, the standards that are held by in evidentiary matters need to apply to work comp, where these cases are pre-Voykin. They don't consider the fact that the courts have clarified to dispute medical causation. Once I establish it with medical testimony that you can't just reference some family doctor notes and undo a neurosurgeon's opinion, especially when you're starting to use parts away from that actual injury like the foot. And what I would like, and the way I've done this since I've got this decision is, Arbitrator Lindsey's opinion, which is only about a page and a half when it comes to causation, is not based upon the evidence. And the standard is the manifest weight of the evidence. It's based upon information not in the file. So if you take Arbitrator Lindsey's decision and mark a line through things not in the record, such as Dr. Wilson's records, such as what does don't pertain or would be admissible to a neurosurgical condition of the spine, her decision doesn't exist. It just doesn't exist when you take out the things that she's saying, well, I would have liked to known this. I would have liked to seen this. What would the doctor have said had this been happening? Let me ask you a question. Did Dr. Fahn admit that if the history provided by the petitioner was inaccurate or incomplete, his opinion would change? Yes. Yes. And Dr. Fahn and most doctors will always admit that if it is inaccurate, but in this case, it wasn't inaccurate. Let me stop you for a second before you go any further with that. Dr. Fahn was actually the one, I mean, he bases his sole causation and injury on the fact that Mr. Marshall reported that he injured himself moving that 55 gallon drum, correct? Yes. And while we have to accept the fact that the court found an accident, we can look into Dr. Fahn's reasoning as to treatment and causation based on the fact that there was everyone else in the record denied that the guy moved the barrel. And if the information is wrong to the doctor, while we have to accept there was an accident, do we have to accept his causation determination if we determine that the information he had was wrong or speculative? I think in this case you do. Now, if you're going to go back and say this event did not happen, that's tough for me. And I have to admit, if he did not move this barrel, that's tough for me. But Dr. Fahn, we deal with these cases where the guy goes in and says, I had no prior back problems. Mr. Marshall went as far as taking his records from a prior doctor in another state and letting him look at the surgical reports. When was the first time, though, that Mr. Marshall reported to a doctor or any medical personnel that he had injured himself while moving that 55 gallon drum, in terms of from the date of the alleged accident to the date of his report? It's the 31st report at World Health, and why it was not in the record, I don't know. But if you look in the record at R52, Dr. Andreese, the PA, said that when she saw Mr. Marshall on March 7th, 2014, he did state he was injured while working on the farm. And he was going to file a work comp claim. Why she didn't put that in the note, I don't know. But Dr. Andreese did come back, or PA Andreese did come back and say, Owen did tell me that at the time. I just didn't note it in my file, which in working in Southern Illinois is not uncommon with these rural health clinics. What I see Dr. Andreese's notes stating is that claimant comes in today for an acute visit. He states that for about three months, his feet have been numb. It started in his right foot with his right three toes, and now it has progressed to both feet. He is having trouble walking. He said that his feet is getting worse. He said he is having a little bit of back pain. He did have back surgery in 2004 at St. Vincent's in Birmingham. So there's an allegation that he said more to her concerning the accident, but we don't have that in the record. Yes, you do. It's R. I'm sorry, where is it? R-52. Okay, okay. All right, thank you. Mr. Jennings, we got a doctor and then you say a PA. Who is it? What is it? It was PA Andreese who he saw on March 7th. That's not a doctor. Well, it's a physician at Rural Health, so. A PA is a physician assistant, I think, isn't it? Yes, that's right. It's correct. I mean, that's the person at the Rural Health Clinic. Are they an MD? I don't know, but that's who he saw that day. He saw a PA, not a doctor. Yes. Okay, well that's a world of difference. Okay, you're done. May I answer that question? If you look at most of these notes from Rural Health that the arbitrator is referencing, such as the one Justice Barberis just read, that is signed by Dr. Andreese. I think he was seeing Dr. Andreese the whole time, not the doctor. So if Dr. Andreese, if the PA's records don't matter, that's, you know, those are the Rural Health records that arbitrator Lindsay references. They're the Rural Health records. I didn't know physician assistants were MDs. They're not. They're not. But that's who saw, that's who was seeing him, that's who arbitrator Lindsay refers to to base her opinion on. I understand, but what's the physician assistant's name? I'm just curious. Amanda Andreese. And you keep calling her Dr. Andreese. Well, that's how they refer to her down here. Sorry. Really? Most of our Rural Health clinics are staffed by PAs, not MDs. Yeah, but they're not called doctor. Yeah, I would agree that would be proper. Well, anyway, that's rather strange. Okay, time is up. Thank you, Mr. Denny. Ms. Barberis, you may reply. Thank you, Your Honor. Basically, everything that Mr. Denny just said points to why the commission found Dr. Fahn's testimony not credible. If you look at the footnote, she just says, she notes that on March 7th, he gave a very specific history of numbness in his feet for the previous three months. This would predate the accident. And the footnote simply says a three-month history of foot numbness, which would have predated the accident. She doesn't say, therefore, there's nothing except that statement of fact. And as I read it, she is saying this fact exists based on the medical records. What does it mean? The petitioner failed to address that. The same thing when she talks about the history given to Dr. Fahn of two sources of his back pain. Again, there's two sources that wasn't addressed. What does that mean? The same thing with the reference to Dr. Wilson's records. She doesn't his back with Dr. Wilson. No records or testimony regarding Dr. Wilson was provided. That's all she says. She doesn't draw any conclusion as to what that would have been. And the fact that I had those records in my hand is completely irrelevant. It's not my burden of proof. If that needs to be explained as to the prior and whether there was an aggravation or what it meant, not my problem. No offense. The issue about the relevance of the prior records, I think it is relevant not only to whether it was an aggravation of a preexisting condition, but also to the applicable level. In his deposition, I asked Dr. Fahn about the MRI done in 2003, 2004. We weren't exactly clear when. And I said, can you read what the doctor's notes that on the MRI indicate? And he said, MRI scan from last year demonstrates asymmetric disc protrusion at L5 S1 on the left. And my question was, and that's the level you operated on, and he said, yes. So I think that's clearly relevant to causation and to Dr. Fahn's credibility and what he testified to. It was the same level. And that to me is what the commission is saying is we didn't have enough information here. There's more unanswered questions than there are answered questions. And that is the reason that they did not find Dr. Fahn's testimony and causation credible. And that is their purview to do that, even if that is the only testimony in the record. With respect to Volkin, that's not a comp case. That's a negligence case. And as Mr. Denny indicated, he would like for that standard to be the same, but as the law stands today, work comp is its own entity, if you will. And I, I love the fact that you guys are the work comp appellate panel that I can't tell you how nice that is to argue to justices who understand the work comp system as opposed to Missouri, where I have to argue to the justices who do everything and educate them. Although at this point we do have some comp justices. So basically my position is the commission got it right when they said Dr. Fahn's testimony was not complete in that the petitioner failed to sustain his burden of proof and present all the evidence that would have given Dr. Fahn's opinion the basis to be believed by the commission. So I would ask that this court affirm the original decision of the commission as we've tongue in cheek, basically decided Dr. Say that lightly. I mean, I don't say that lightly, and I do say it with tongue in cheek. So I would ask for an affirmation of the commission's original decision denying causation. Thank you for your time. Okay. Thank you, Miss Parks. Mr. Denny, for your arguments in this matter this morning, it will be taken a revisement and a written disposition shall issue and we will be having a new case presented.